PUGET SOUND NAVIGATION CO. v. CANYON LUMBER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. December 2, 1918.)

No. 3177.

COLLISION ⚖61—STEAMER AND MEETING TOW—EXCESSIVE SPEED IN FOG.

A collision between a scow in tow and a meeting steamer, moving at a speed of 15 miles in a fog, *held* due to the fault of the steamer, because of her speed and her attempt to cross the scow's towline after having safely passed her tug.

Appeal from the District Court of the United States for the Western District of Washington, Northern Division; Jeremiah Neterer, Judge.

Suit in admiralty for collision by the Canyon Lumber Company and others against the Puget Sound Navigation Company, owner of the steamer Indianapolis. Decree for libelants, and respondent appeals. Affirmed.

Ira Bronson, J. S. Robinson, H. B. Jones, and Bronson, Robinson & Jones, all of Seattle, Wash., for appellant.

H. H. A. Hastings and Livingston B. Stedman, both of Seattle, Wash., for appellees Canyon Lumber Co. and Port Blakely Mill Co.

Roy L. Cadwallader, of Seattle, Wash., for appellees Smith.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. On the morning of October 20, 1916, the tug Klickitat, having in tow the scow Dorothy D, laden with lumber belonging to the Port Blakely Mill Company, was on her way from Port Blakely to Pier No. 2 at Seattle. While navigating in a fog, steaming out from Seattle, the Indianapolis, a steam vessel owned by the Puget Sound Navigation Company, plying between Seattle and Tacoma, collided with the scow, damaging it and throwing its cargo into the bay. Libel was instituted against the Puget Sound Navigation Company, and damages were awarded as prayed, from which decree this appeal is prosecuted.

But brief reference to the testimony need be made. The Klickitat left Port Blakely in the morning about 20 minutes to 5. It had the scow Dorothy D in tow, with a line 300 feet in length. Two floats, consisting of rafts of boom sticks, were also in tow behind the Dorothy D. These floats were probably 80 feet each in length, and arranged one just behind the other, the first held close to the scow. The weather was clear, and the Klickitat headed on a straight course to Pier 2, making allowance for the swing of the tide. The tug ran about halfway between the buoy and Duwamish Head, some distance out from Seattle. The course was taken, as it generally was, to keep out of the roadstead, as the steamers usually passed outside or to the north of the buoy. The master of the tug relates that, when he got abreast of the buoy, the weather began to get foggy, and he commenced to blow his signal, one long and two short whistles, at intervals of about 30 seconds; that, after passing the buoy some little time, he heard a boat

whistling somewhere in the fog ahead, heard her blow several whistles, and suddenly the Indianapolis appeared in view, coming out of the fog, 300 or 400 feet distant, and in a few seconds she was directly abreast of the tug, going very fast, seemingly at full speed; that immediately on emerging from the fog the Indianapolis blew two whistles, signifying her intention to pass to the tug's starboard, and the tug answered with like signal, assenting thereto; that the boat passed within 30 feet of the tug, starboard to starboard, on across the tug's tow-line 200 feet or more in the rear, and struck the scow head on about 6 feet from its port forward corner, splitting off a section extending back about 72 feet; that the Klickitat was running a little less than 4 miles per hour, and did not stop its engines or slow down after hearing the fog signals from the Indianapolis, until it was seen that the latter vessel was going to collide with the scow. The master of the tug further says that, when he first saw the boat, she was bearing down on the tug from her starboard bow, exactly over the tug's port, and that the tug pulled over to port to get out of her way, and kept on going.

The master of the Indianapolis relates that he left the Colman dock, which is to the north of Pier 2, at 7 a. m.; that his boat steamed into the bay, coming down to about Pier 2 in making the turn, and got on her course at 7:04, the fog being "pretty thick"; that she had proceeded about a mile when she met the tug, and was at the time running 15 miles per hour, practically her full speed, and was blowing her small fog whistle; that the collision happened around 7:07 or 7:08 o'clock. The first intimation the master had that another boat was ahead was three short toots of a whistle, which he took for a towing whistle, whereupon he stopped his engines. He testifies that he then blew a fog signal, and got no response, but heard the exhaust from a gas boat (the tug) practically right ahead of him; that he saw the tug on his starboard bow, and blew a starboard passing whistle, which the tug did not answer; that, when his boat struck the scow, her engines had been reversed 6, 7, or 8 seconds. The mate of the Indianapolis, who was at the time on the starboard side of the upper deck, heard a gas boat somewhere ahead giving whistles, heard it once, and then heard the exhaust a little on the starboard bow, "mostly ahead, nearly right ahead." Then shortly afterwards, perhaps a minute, he saw the tug "right down on the starboard side" abreast of where he was standing. He reported to the captain that there was a scow in tow. According to the engineer, the vessel's engines were backing at the time of the collision, and had been for about half a minute, but she had not lost her headway. The stop signal was given him probably a minute before the signal to back.

Counsel for the Indianapolis frankly admit that she was in fault, in consideration of article 16 of the Rules of Navigation (Act Aug. 19, 1890, c. 802, § 1, 26 Stat. 326 [Comp. St. 1916, § 7854]), but ardently insist that the tug should share the damages, in view of the requirements of the same rule. While it may be true that the tug did not literally observe the latter clause of the rule, in not stopping her engines on hearing the fog signals of the Indianapolis, yet it is question-

able whether she did not observe it so far as the circumstances of the case would admit. She was running at a very moderate speed, and the stopping of her engines would have allowed the tow to encroach upon her. We do not say, however, that the circumstances excused her from a strict observance of the rule.

But, laying this aside, the Indianapolis appears to have been grossly at fault in another particular, which occurred after the danger of collision from the approach of the vessels to each other through the fog had been obviated. The Indianapolis, observing the tug while some 300 or 400 feet away, gave the signal for passing to the starboard of the tug, which we believe was assented to, and the maneuver was made accordingly. The two vessels passed safely, but quite close to each other. It further appears that the Indianapolis then attempted to cross the towline of the tug. If it was practicable to clear the tug, it was also practicable to clear the scow to its starboard, and that course should have been adopted. The Indianapolis was running at full speed, a high rate of 15 miles per hour, through the fog, and the stopping of the engines when the tug's fog signal was heard checked her but slightly, for she was still running at a high rate when she passed the tug. If she had continued her course on a port swing, with the scow still 300 feet in the rear, there cannot be the least doubt that she would have cleared the tow also to the latter's starboard by a safe margin. The reversing of the engines of the Indianapolis when in near approach to the tow but added to the danger of collision, because the effect was to throw the ship to starboard, when its course should have continued to port to make the clearance. The Thielbek, 241 Fed. 209, 216, 154 C. C. A. 129.

We think the Indianapolis was grossly at fault in attempting, while running at a high rate of speed, to cross the towline of the tug, and in not continuing her course, to port, and thereby clearing the tow.

Decree affirmed, with costs to appellees.